IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

**LADONNA L. BLAIR**                                                                                         **PLAINTIFF**

**vs.**                                                  **4:06CV00513-WRW**

**MICHAEL J. ASTRUE,**
**Commissioner, Social Security Administration**[1]                              **DEFENDANT**

## ORDER

Plaintiff, Ladonna L. Blair, brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, 42 U.S.C. § § 405(g) and 1383(c)(3), as amended, for judicial review of a final decision of the Commissioner of Social Security denying her claim for Disability Insurance (SSD) benefits under Title II and for Supplemental Security Income (SSI) benefits under Title XVI of the Act, 42 U.S.C. §§ 416(I), 423, 1381-1382c. Both parties have submitted briefs, and the case is ready for disposition.

**I.   Procedural Background**

Plaintiff filed applications for SSD and SSI benefits on November 17, 2003.[2]  Plaintiff alleges that she became disabled on January 31, 2001, and is unable to work due to malignant hyperthermia syndrome, bi-polar disorder, manic depression, and seizures.[3]  Her claims were

---

[1] Michael J. Astrue was sworn in as Commissioner of the Social Security Administration on February 12, 2007. He, therefore, is substituted for Jo Anne B. Barnhart under Fed. R. Civ. P. 25(d)(1).

[2] Tr. 66-68, 347-348. Plaintiff previously filed for disability benefits. She filed applications for SSD and SSI benefits on January 12, 1987, which were denied at the initial level on February 6, 1987, with no further appeal. She filed applications for SSD and SSI benefits on January 14, 1988, which were denied on February 24, 1988, with no further appeal. She filed applications for SSD and SSI benefits on May 13, 1992, which were denied on June 24, 1992 with no further appeal. She filed applications for SSI and SSD benefits on October 3, 2001, which were denied at the initial level on December 21, 2001, with no further appeal. (Tr. 13-14).

[3] Tr. 119.

denied initially and upon reconsideration. At Plaintiff's request, a hearing was conducted by the Administrative Law Judge (ALJ) on August 30, 2005, at which Plaintiff, her mother and a vocational expert (VE) testified.[4] On January 4, 2006, the ALJ issued a decision denying Plaintiff's claim for benefits.[5] The Appeals Council denied Plaintiff's request for review, making it the final decision of the Commissioner.[6] It is from this decision that Plaintiff seeks judicial review.

## II. Summary of Evidence in Record

Plaintiff was born on September 23, 1968, and was 36 years old at the time of the hearing.[7] She has a high school graduate equivalency degree (GED) and has past relevant work (PRW) experience as a production line worker at Maybelline.[8] She states that she has been married 11 times, and at the time of the hearing, was living with her husband and eight month old son.[9]

At the hearing, Plaintiff testified that she is unable to work due to anxiety attacks and mood swings.[10] She also complained of headaches and back pain, which limit her ability to walk, sit, and stand.[11]

The medical evidence reveals that Plaintiff has received treatment over the years for her anxiety. On February 19, 2004, Steve A. Shry, Ph.D., a psychologist, diagnosed Plaintiff as having

---

[4]Tr. 356-397.

[5]Tr. 10-22.

[6]Tr. 4-7.

[7]Tr. 61.

[8]Tr. 14, 125.

[9]Tr. 362.

[10]Tr. 368-370.

[11]Tr. 370-372, 381-383.

Adjustment Disorder with Depression and Mixed Anxiety Features. According to Dr. Shry, "[Plaintiff] has previous Bipolar history and claims to still be evidencing seizure-like activity, which is currently untreated."[12] Dr. Shry believed that Plaintiff's condition is not expected to improve significantly over the next 12 months.[13]

Dr. Kelly Meyer treated Plaintiff from August 6, 2002 through July 15, 2004 for anxiety, and back pain.[14] Dr. Meyer prescribed a number of medications for Plaintiff's anxiety disorder, including Xanax, Zyprexa, and Prozac. On June, 15, 2004, Dr. Meyer diagnosed Plaintiff with degenerative osteoarthritis in the lumbar spine, but found that Plaintiff did not have any neurologically significant problems.[15]

Dr. Randeep Mann has been Plaintiff's treating physician since January 2005. On May 18, 2005, he wrote:

> Ladonna [Blair][16] has been under my care since January of 2005. Ms. [Blair] has been diagnosed with L-spondylosis, C-spondylosis, HNP L-spine, arthritis, headaches, bronchitis, CT syndrome, wrist, insomnia, and depression. Ms.[ Blair] has been prescribed various medications to handle her multiple symptoms. These medications include motrin 600 mg three times a day, lorcet 10 mg 1 every 6 hours as needed, xanax 1 mg at bedtime, and amitryptlline 25 mg once at bedtime, and Prozac 20 mg once a day.

---

[12]Tr. 297-299.

[13]*Id.*

[14]Tr. 320-329.

[15]Tr. 320.

[16]At the time Dr. Mann wrote the report, Plaintiff's last name was Weems.

> Ms. [Blair] will continue to be evaluated in my clinic on a PRN basis. If her condition worsens in the next few months, I will suggest that she be referred to an orthopedic surgeon or neurosurgeon for further evaluation.[17]

### III. The Commissioner's Final Decision

The ALJ undertook the familiar five-step analysis in determining whether Plaintiff was disabled.[18] The ALJ found that Plaintiff has not engaged in substantial gainful activity since the alleged onset of disability. He found that Plaintiff had the following severe impairments: history of epilepsy, mood disorder, and disorder of the back, but that none of them were severe enough to meet or be medically equivalent to an impairment listed in Appendix 1, Subpart P, Regulations No. 4.[19]

The ALJ evaluated Plaintiff's subjective allegations and complaints pursuant to the criteria set forth in *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984).[20] He found Plaintiff's subjective

---

[17] Tr. 333.

[18] 20 C.F.R. §§ 416.920 and 404.1520; Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003) (The five-step sequential evaluation is as follows: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether he or she has a severe and medically determinable physical or mental impairment; (3) whether the claimant may be deemed disabled because the impairment meets or equals a listed impairment in Appendix 1 to Subpart P, Title 20, Code of Federal Regulations; (4) whether the claimant is able to return to past relevant work, despite the impairment; and if not (5) whether the claimant can perform any other kind of work.).

[19] Tr. 15.

[20] *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984) (These include the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as (1) the claimant's daily activities; (2) the duration, frequency and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.).

allegations not to be fully credible.[21] The ALJ found that Plaintiff has the residual functional capacity (RFC) to

> lift and/or carry less than 10 pounds frequently, 10 pounds occasionally, and to sit for a total of six hours and stand and/or walk for a total of 2 hours each in an 8-hour workday. From a mental standpoint, she is able to perform work where interpersonal contact is routine but superficial, complexity of tasks is learned by experience, with several variables and use of judgment within limits, and supervision required is little for routine tasks but detailed for non-routine tasks.[22]

The ALJ determined that Plaintiff is unable to perform her PRW, and that she retained the RFC to perform a significant range of sedentary work. Relying on the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of other work that exists in significant numbers in the national economy such as cashier, information clerk, and assembly worker. Therefore, the ALJ found that Plaintiff is not disabled.[23]

After the ALJ rendered his decision, Plaintiff submitted, additional medical evidence to the Appeals Council, including a January 12, 2006, letter from Dr. Mann, which reads:

> Ladonna Blair has been under my care since January of 2005. Ms. Blair has been diagnosed with multiple medical problems, including, but not limited to, C-spondylosis, L-spondylosis, oncomycosis, arthritis, severe bouts of insomnia and depression, and obesity. She is on many different medications to manage her various symptoms.
>
> Ms. Blair is unable to gain, engage in, or sustain gainful employment of any type. Her symptoms are not expected to improve; rather, they are expected to deteriorate over time. Her ability to return to employment will be evaluated on a regular basis and her prognosis will be updated at that time.[24]

The Appeals Council considered the additional evidence, but concluded that it did not provide a basis for changing the ALJ's decision. Specifically, the Appeals Council noted the

---

[21]Tr. 21.

[22]*Id.*

[23]Tr. 20-21.

[24]Tr. 355.

similarity between the January 12, 2006 letter and the May 18, 2005 letter.  It commented that in the earlier letter Dr. Mann did not indicate that Plaintiff was unable to engage in substantial gainful activity, and that there was no indication that Plaintiff's condition had worsened during the time between the two letters.  In its decision to Plaintiff, the Appeals Council stated:  "In fact, the record shows that you underwent a lumbar spine facet joint injection in September 2005 which significantly improved your level of pain . . ."[25]

## IV.   Standard of Review

The Court's function on review is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole.

> Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion. In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it. As long as substantial evidence in the record supports the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome,  or because we would have decided the case differently.[26]

## V.   Discussion

Plaintiff contends that the ALJ's decision is not supported by substantial evidence because the ALJ failed to meet the burden of showing that significant numbers of jobs exist in the national economy within Plaintiff's remaining capabilities; failed to consider the combined effect of Plaintiff's multiple impairments; and failed to give controlling weight to Plaintiff's treating physician's opinion of disability.

I have thoroughly reviewed the record, and find, as discussed below, that the case should be remanded for another reason, that is, the failure of the ALJ to develop the record.  The ALJ has

---

[25]Tr. 5.

[26]*Roberts v. Apfel,* 222 F.3d 466, 468 (8th Cir. 2000) (internal citations omitted).

a "duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel."[27] The eight pages of handwritten notes of Dr. Mann are basically illegible.[28]

I doubt that the ALJ or the Appeals Council were able to decipher Dr. Mann's handwritten medical records. Although the ALJ and the Appeals Council referred to Dr. Mann's typewritten letters, neither refer to any findings or notations in the eight pages of illegible handwritten medical records. Indeed, they did not even get the date right for the lumbar spine facet joint injection. Both the ALJ and the Appeals Council refer to a September 2005 procedure. The procedure was performed in March 2005, a mistake noted by Defendant in his brief.[29] If the ALJ and the Appeals Council were unable to read the scrawled March date on the typewritten form, it is highly unlikely that they could make out the handwritten medical records.

That the ALJ did not discuss any of the findings in the handwritten medical records is also indicative of his failure to be able to read them. The records may, in fact, contain important information that should have been considered. There are references to pain, other symptoms, medications, and diagnoses. "[I]llegibility of important evidentiary material can warrant a remand for clarification and supplementation."[30] The ALJ should obtain legible copies of the medical records or direct interrogatories to Dr. Mann and reconsider Plaintiff's impairments.[31]

Furthermore, after receiving and reviewing Dr. Mann's medical records, the ALJ should reconsider Plaintiff's subjective complaints of pain and consider the side effects of Plaintiff's

---

[27] *Bishop v. Sullivan*, 900 F.2d 1259, 1262 (8th Cir. 1990).

[28] Tr. 335-340, 344-345.

[29] See page 9 of Defendant's Response Brief, Docket No. 10, in which the corrected March date is placed in brackets.

[30] *Bishop v. Sullivan*, 900 F.2d at 1262.

[31] *Id.*

medications. Should the medical record need further development, the ALJ should order consultative examinations.[32]

## VI.   CONCLUSION

In sum, the Court finds that ALJ did not thoroughly evaluate whether Plaintiff is disabled. A remand, therefore, is necessary for the ALJ to develop the record regarding Plaintiff's impairments and to properly evaluate Plaintiff's RFC.

THEREFORE, the Court REVERSES the decision of the Commissioner and REMANDS the case to the Commissioner with instructions to conduct further proceedings consistent with this Order.  This is a sentence-four remand.[33]

IT IS SO ORDERED this 31st day of July, 2007.

/s/Wm. R. Wilson, Jr.
UNITED STATES DISTRICT JUDGE

---

[32]*Id.* at 1263. ("Should the medical record require additional development, it is the ALJ's duty to develop the record by directing interrogatories to [plaintiff's] physicians or by ordering consultative examinations.").

[33]42 U.S.C. § 405(g).